IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | CRIMINAL NO. 3:13-479-CMC |
| v. | **OPINION and ORDER** |
| Jerry Elmo Hartsoe, | |
| Defendant. | |

Defendant, proceeding *pro se*, seeks relief in this court pursuant to 28 U.S.C. § 2255. Defendant raises six Grounds for Relief. The Government filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. Defendant has responded to the Government's motion and this matter is ripe for resolution.

**I. BACKGROUND**

In June 2013, Defendant was indicted in this District for mail fraud, a violation of 18 U.S.C. § 1341, and aiding and abetting, a violation of 18 U.S.C. § 2 (Counts 1 through 8); and making false statements in violation of 18 U.S.C. § 1001 (Count 9). Defendant was thereafter charged in a superseding indictment with an additional count of passing fictitious financial instruments in violation of 18 U.S.C. § 514 (Count 10).

Defendant, along with two co-defendants, proceeded to trial. Count 10 (passing fictitious financial instruments) was dismissed by the court prior to submission to the jury; Defendant was thereafter convicted of the remaining counts (Counts 1 through 9). The matter was then set for sentencing.

1

On March 24, 2014, Defendant's counsel filed a motion for status of counsel hearing. On May 7, 2014, the court conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), at which the court ruled that Defendant would be allowed to represent himself at sentencing. Sentencing was then rescheduled to allow additional time for Defendant to review and respond to the Presentence Report (PSR).

On July 15, 2014, Defendant appeared *pro se* for sentencing. After overruling in part and sustaining in part Defendant's *pro se* objections to the PSR, the court sentenced Defendant to 120 months' imprisonment, five years' supervised release, a $900 special assessment, and ordered $681,410 in restitution.[1]

Defendant filed a Notice of Appeal. Appellate counsel was appointed by the Fourth Circuit Court of Appeals. On January 29, 2015, Defendant's conviction and sentence were affirmed. *United States v. Hartsoe*, 591 F. App'x 216 (4th Cir. 2015). Defendant then timely filed the current motion for relief under 28 U.S.C. § 2255.

Defendant raises six Grounds for Relief. Ground One alleges counsel was ineffective in failing to review the contents of Defendants' computer hard drive seized by the Government. Ground Two claims the Government committed prosecutorial misconduct in failing to turn over exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and/or in corrupting the above-noted computer hard drive so that it was inaccessible for review. Ground Three contends counsel was ineffective in failing to subpoena certain documents or witnesses. Ground Four asserts that the court denied Defendant's right to self-representation under *Faretta v. California*, 422 U.S.

---

[1] The sentence for the mail fraud counts was 120 months as to each count, to be served concurrently. The sentence for the false statements count was 60 months' imprisonment, to be served concurrently with the other counts.

2

806 (1975). Ground Five asserts that counsel allegedly failed to raise a good faith defense at trial. Finally, Ground Six alleges appellate counsel was ineffective in failing to raise claims of prosecutorial misconduct and the court's alleged violation of *Faretta* on direct appeal.

## II. STANDARDS

As to claims other than those alleging ineffective assistance of counsel, Defendant may not ordinarily bring claims in a §2255 motion that were not raised at trial or on direct appeal. "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 162 (1982). A post-conviction motion is not a direct appeal, and "[f]or this reason, [the Supreme Court has] long and consistently affirmed that a collateral challenge may not do service for an appeal." *Id.* at 165; *see also United States v. Pettiford*, 612 F.3d 270, 279 n.7 (4th Cir. 2010). To pursue such a claim in a §2255 motion, Defendant must show either cause and actual prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

As to Defendant's claims that he received ineffective assistance of counsel, the standard is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id.* As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id.* at 687. A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. *See also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

3

As to the second prong of the *Strickland* test, Defendant must establish that he experienced prejudice as a result of counsel's ineffectiveness, meaning that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (internal quotation marks and citation omitted). A defendant must affirmatively prove prejudice that is "so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland*, 466 U.S. at 697).

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence, and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 521-22 (quoting *Strickland*, 466 U.S. at 690–91). *See also Buckner v. Polk*, 453 F.3d 195, 201 (4th Cir. 2006) (explaining that counsel's conduct is generally presumed to be a reasonable strategic choice). The Fourth Circuit has held that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence . . . would have been produced." *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996).

A criminal defendant's right to effective assistance of counsel extends to the direct appeal of a criminal conviction and requires the same showing of deficient performance and prejudice. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (*en*

4

*banc*). In applying *Strickland* to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although it is possible to bring a successful ineffective assistance of appellate counsel claim based on failure to raise a particular issue on direct appeal, the Supreme Court has reiterated that it is "difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

When a defendant alleges appellate counsel failed to include an issue on direct appeal, the merits of the omitted issue must first be evaluated. *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Smith*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To establish prejudice relating to the actions of appellate counsel, Defendant must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on his appeal. *See Smith*, 528 U.S. at 285-86. That is, Defendant must demonstrate that had counsel included the arguments Defendant contends should have been raised on appeal, the court of appeals would have found error and remanded Defendant's case to this court.

As to prosecutorial misconduct, "[t]he test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990). Relatedly, a defendant's right to due process is violated when the prosecution suppresses evidence that is both favorable to the accused and material either to guilt or innocence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components to a *Brady* violation: (1) the evidence at issue must be favorable to the accused; (2) that evidence must have been suppressed by the Government; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

### III. DISCUSSION

#### A. DEFAULTED GROUNDS

Defendant presents two grounds for relief that could have been, but were not, raised on direct appeal. Ground Two contends that the Government committed prosecutorial misconduct and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when it "caused the corruption and inaccessibility of exculpatory evidence contained on a computer hard drive . . . ." Mem. Supp. Mot. (hereinafter "Memo.") at 17, ECF No. 422-1. Ground Four contends this court denied Defendant his right to self-representation at trial under *Faretta v. California*, 422 U.S. 806 (1975).

These claims are procedurally defaulted. To bring a defaulted claim in a §2255 motion, Defendant must show either cause and actual prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Defendant has made no showing of cause and prejudice, nor has he provided evidence that he is actually innocent of his convictions. Therefore, the Government is

6

entitled to summary judgment on Grounds Two and Four and these Grounds are dismissed with prejudice.[2]

### B. INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS FOR RELIEF

**1. Ground One – Failure to Timely Investigate Computer Hard Drive**

Defendant alleges counsel was ineffective in failing to access and review a computer hard drive seized by the Government. Defendant maintains this computer hard drive contained exculpatory evidence of "Satisfaction of Mortgage" documents, copies of which he contends did not exist in customers' files and were evidence of the viability of Defendants' "debt elimination" scheme.

Based on information obtained during an investigation, the Federal Bureau of Investigation (FBI) secured a search warrant for the offices of Eden Gifted Properties (EGP), the business of Defendant and his co-Defendants. On June 1, 2012, the FBI executed the search warrant seizing, *inter alia*, a variety of documentary evidence and a computer hard drive which operated as a server for EGP computers. The Government retained this evidence throughout the prosecution of this matter.

The computer hard drive was made available for review by defense counsel prior to trial, and Defendant's trial counsel, James P. Craig (Craig), does not dispute that Defendant told him documents existed on the computer hard drive which Defendant contended were "Satisfaction of

---

[2] These Grounds are also argued as part of a separate ground for relief (Ground Six) and are addressed below.

7

Mortgages." However, Craig did not review the contents of the hard drive prior to the beginning of trial. Craig attests that

> [t]he exculpatory evidence which Hartsoe claimed was on the computer was a document that would have constituted a satisfaction of mortgage which would have, in Hartsoe's opinion, provided evidence that Hartsoe and his co-defendant[s'] scheme of satisfying indebtedness really worked. . . . The undersigned was and is of the opinion that even if a document existed on the computer that would have constituted a Satisfaction of Mortgage, that such document would not have been exculpatory evidence. . . . The undersigned was and is of the opinion that Hartsoe and his co-defendants' scheme of satisfying debt was so far fetched and unbelievable that producing a Satisfaction of Mortgage would not have been considered by a jury as exculpatory evidence but rather only as evidence of the possibility that a bank may have fallen for the scheme just as many of [the] victims had fallen victim to the scheme.

Craig. Aff. at 3, ECF No. 433-2.

During the course of trial, counsel for co-Defendants Chappell Dew and Mark Manuel argued that they attempted to review the contents of the hard drive and were unsuccessful. *See* Trial Tr. (Non-Testimony Portions) at at 143, ECF No. 416. Initially, counsel for co-Defendant Dew argued that he and counsel for co-defendant Manuel were unable to access material on the hard drive because of encryption placed on the hard drive by the Government. *Id*. at 143. The Government denied it had placed any encryption on the hard drive, asserting that it had "not placed any sort of locks or restrictions [on access to the information] and that any restrictive access on this hard drive would be something that the defendants have done themselves on their own computer." *Id*. at 144. The Government indicated it was able to review material on the hard drive through use of a "forensic tool kit," but that "the encryption is the defendants'." *Id*. at 146. The court noted that Defendants "can either tell their lawyers how to get through their encryption or the FBI would have to un-encrypt it for them if they can't un-encrypt it any more." *Id*. at 146-47. The Government

maintained that if it "un-encrypted" the information for defense counsel, that would "alter[ ] the evidence," *id*. at 147, and "[w]e want to give them a copy of what exactly was on there." *Id.*

The court then attempted to ascertain whether the FBI was indicating that "they had to use some method to break through the encryption[.]" *Id*. Counsel for co-Defendant Manuel contended that counsel had downloaded the forensic tool kit but that the files were still inaccessible because "we needed some Oracle database running underneath the tool kit. And I don't have that. I don't even know what that is." *Id.* at 149.

> After a lunch break, the Government informed the court that the FBI had looked at
> 
> certain parts, [and had gotten] through the encryption on that computer. However, what they saw from looking at it seemed to be electronic copies of the hard copies that we already had. A full [un]encryption would have required the computer to be sent to Quantico. We did not do that. We instead told the defense that if they wanted to come see it to let us know six months ago. So, from speaking with the [FBI personnel], it does not appear that even we were able to open all of it because of the encryption placed on it by the defendants.

*Id*. at 190.

The next day, counsel for co-Defendant Dew indicated that all defense counsel had gone to the review the hard drive at its location (at the local FBI facility), and that the files on the hard drive were *not* encrypted but that the files – "thousands and thousands and thousands of pages," *id*. at 192 – were not searchable. Counsel for Defendant Hartsoe, Mr. Craig, stated that the FBI agent who assisted counsel in accessing the hard drive indicated counsel could access the material on the hard drive and "search it[,]" *id.* at 195; counsel for co-Defendant Dew indicated that counsel understood that to mean counsel would have to search the hard drive by looking at each file. *Id.* The

9

undersigned then indicated that because counsel had sufficient time prior to trial to review the material, it was at a loss to remedy the problem as trial was in process.

Defendant's Ground for Relief asserts that counsel failed to access the computer hard drive in a timely manner; that is, that the alleged ineffectiveness arose *prior to* trial. *See* Memo. at 23 (counsel "had access to the confiscated computer no less than FOUR MONTHS prior to the onset of trial . . . .") (emphasis in original).[3]  Therefore, it must be determined whether Craig's failure to

---

[3]At the beginning of trial, the court inquired of Defense counsel whether "anything can be gained in terms of efficiency by discussing any categories of objections . . .?" Trial Tr. at 21, ECF No. 416.  The following exchange occurred:

> MR. CRAIG: Your Honor, insofar as categories of  objections and stuff, my co-counsel and I have discussed it.  And we'll argue different motions individually.  But all motions made on behalf of one defendant will be considered to be on behalf of all defendants.  And rather than us jumping up and saying I join in with that motion or what have you, then would the Court just consider the motion made for one defendant, or objection as well, was applied to all?  Unless we would opt out of it for some reason.
>
> THE COURT:  Unless you say you prefer not to join in that objection?
>
> MR. CRAIG: That's correct.
>
> THE COURT:  All right.  So the record will reflect that each time a defendant's attorney makes an objection, the other two attorneys are deemed to have joined in that objection unless they opt out of it at that time.

*Id*. at 21-22.

Defendant initially seeks to argue counsel's ineffectiveness by imputing actions and argument of co-Defendants' counsel to counsel Craig regarding review of the computer hard drive during trial.  Defendant contends that the varying arguments raised by counsel for co-Defendants (inability to access the hard drive and then that the material was accessible but not searchable and was exceedingly voluminous) are imputed to Defendant's counsel based on the court's ruling regarding joint motions and objections. Defendant maintains that counsel Craig's failure to indicate that he did not join in the arguments presented by co-Defendants' counsel means he (Craig) was ineffective.  However, Defendant's argument is that counsel failed to review the hard drive in a timely manner, which, by all accounts, would have been prior to the commencement of trial.

10

review the computer hard drive in possession of the Government prior to trial was ineffective and, if so, whether this failure prejudiced Defendant.

Assuming for purposes of this motion that counsel was ineffective in failing to review the computer hard drive prior to commencement of trial, Defendant cannot establish prejudice resulting from counsel's alleged failure. First, at no time during the proceedings did any defendant contend that the hard drive contained specific documents showing that the process had resulted in an actual satisfaction of the mortgage of any EGP client. Notably, Defendant fails to proffer any evidence of any such document, presumably available from any county clerk of court where the mortgage had been originally recorded, in support of his argument.

During trial, counsel for co-Defendant Manuel introduced a letter contained in Government Exhibit 440 which indicated that the mortgage of one of EGP's clients, Diane Hill Bray (Bray), had been satisfied during the time Defendants employed their scheme. *See* Trial Tr. Vol. 5 at 812-14, ECF No. 378. Accordingly, it cannot be said that documents from third parties (in the case of Bray, mortgage holder Wells Fargo) were "exclusively contained" on the hard drive in question. Moreover, Defendant provides no evidence that the satisfaction of any mortgage in question (for example, Bray's) resulted from the fraudulent blizzard of paper produced by Defendant and his co-Defendants.

Second, Defendant argues that these "Satisfaction of Mortgage" documents "had never been photocopied and inserted into hard-copy files" and were "exclusively contained in the computer files." Memo. at 24. This contention is in direct opposition to the testimony of Kevin Hayes at trial, indicating that the process had never been successful in eliminating any EGP customer's debt.

> Q. Was there a timeframe established as to when you were going to send the "congratulations, your debt is paid letter?"
>
> A. I don't know if we had that letter.
>
> Q. Oh. Well, in that database, in that template, was there one for notifying the customers that their debt had been eliminated as per this process?
>
> A. Not that I know of.
>
> Q. So you never even had that letter?
>
> A. Not that I'm aware of.

Tr. Trans. Vol. 3 at 57, ECF No. 376.  Accordingly, the only evidence in the record indicates that the process had never been successful.

Third, the evidence of Defendant's guilt was voluminous and overwhelming.  The Government introduced over 600 exhibits, most of which were EGP client files containing numerous frivolous documents sent through the mails in an effort to execute Defendants' fraudulent scheme.  As noted above, at least one letter contained in those files was introduced by defense counsel and evidenced satisfaction of a mortgage; however, Defendant provides no evidence other than his self-serving, unverified statement[4] that these documents noting satisfaction of a mortgage "validated the effectiveness of the process being used by [co-defendants]."  Memo. at 24.  Defendant's conviction evidences the jury's rejection of the argument that the satisfaction of mortgage was by any means other than via payment of the mortgage balance.

---

[4] Defendant's Motion for Relief under 28 U.S.C. § 2255 is presented under Defendant's sworn declaration, *see* Mot. at 14, ECF No. 422.  However, the memorandum in support of the motion for relief is not attested to or supported by an affidavit of Defendant.

Therefore, as Defendant cannot establish prejudice on this Ground for Relief, the Government is entitled to summary judgment and it is dismissed with prejudice.

### 2. Ground Three – Failure to Investigate and Subpoena Documents

Ground Three contends counsel was ineffective in failing to investigate and subpoena "the originals of Setoff Bonds sent to clients' lenders, that reflected endorsement by the lenders and processing by the Federal Reserve Bank; and Satisfaction-of-Mortgage documents prepared by the lenders." Memo. at 32. Defendant contends these documents "would have refuted the Government's assertion of a fraud, and specifically, that the co-defendants were making misrepresentations to clients." *Id.* at 33. The Government counters that Defendant's Ground for Relief is without merit because no evidence exists showing the validity of Defendant's debt reduction process.

As to witnesses, Defendant has not made a specific showing of the content of testimony of such witnesses. Additionally, Defendant has failed to contradict Craig's averment that he (Craig) subpoenaed every witness Defendant requested be subpoenaed to testify at trial and that all these witnesses in fact testified.

The court agrees with the Government. Defendant's conclusory assertions regarding the existence of the documents and/or witnesses in question fail to establish that any exculpatory evidence actually exists or that counsel failed to subpoena witnesses requested by Defendant. Accordingly, the Government is entitled to summary judgment on this Ground for Relief, and it is dismissed with prejudice.

### 3. Ground Five – Failure to Argue Good Faith Defense with Competent Evidence

Ground Five asserts counsel was ineffective in failing to vigorously pursue a "good faith" defense. *See* Memo. at 39-40. Defendant contends that he believed the "process" used by Defendants was lawful and that "[t]here was [ ] no reason to believe in the unlawful nature of the 'process' given [Defendant's] level of involvement." *Id*. at 39. In other words, Defendant argues he was an innocent participant in the scheme.

As noted by Defendant, the court gave a "good faith" charge in its closing instructions to the jury. Defendant maintains that "the jury was provided with no indication of how it could apply to Hartsoe." Mem. Supp. at 40. However, this would be an improper comment on the facts by the court, and the jury determined that Defendant was not an innocent participant in the scheme.[5]

### 4. Ground Six – Ineffective Appellate Counsel – Failure to Raise Prosecutorial Misconduct and *Faretta* on Appeal

Ground Six contends appellate counsel was ineffective in failing to raise on appeal the district court's alleged error in "refusing to intervene in the matter of the inaccessible hard drive," Memo. at 43; in failing to argue that the Government had committed a *Brady* violation relating to the computer hard drive discussed above; and that "prosecutorial misconduct had precipitated that violation." *Id*. Defendant also alleges appellate counsel was ineffective in failing to raise a *Faretta*

---

[5]Defendant also argues that counsel never "urge[d]" Defendant to testify. Mem. Supp. at 40. Defendant maintains that his testimony "would have enhanced [Defendant's] defense for the jurors to hear in his own words why he believed his actions were lawful." *Id.* at 40. However, Defendant was advised by the court of his right to testify and of the fact that the decision was ultimately his. Defendant chose not to testify.

14

claim on appeal, arguing it was a "structural error that [would have] survived 'plain error' analysis . . . ." *Id.*[6]

### *a. Prosecutorial Misconduct/Brady Violation*

Defendant contends that appellate counsel was ineffective in failing to argue that the Government committed prosecutorial misconduct and violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it allegedly rendered the computer hard drive inaccessible by defense counsel.

1. Prosecutorial Misconduct

As explained in III.B.1 above, Defendant has not presented evidence to support his claim that the Government rendered the hard drive inaccessible. Therefore, Defendant has failed to establish prejudice in failing to raise this issue, as he presents no evidence that would have resulted in the overturning of Defendant's conviction by an appellate court. Accordingly, this claim for relief is rejected.

---

[6]Defendant also states any *Faretta* error is a structural error that "requires automatic reversal because the impact of its denial is not amenable to 'harmless-error' analysis." Memo. at 37.

15

2. *Brady* Violation

Defendant maintains the Government violated *Brady v. Maryland*, 374 U.S. 83 (1963), in allegedly rendering the above-discussed computer hard drive inaccessible. There are three components to a *Brady* violation: (1) the evidence at issue must be favorable to the accused; (2) that evidence must have been suppressed by the Government; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

As noted above, Defendant fails to establish that any Government action rendered the computer hard drive inaccessible. Counsel went to review the hard drive at its location (at the local FBI facility), and the files on the hard drive were *not* encrypted but the files – "thousands and thousands and thousands of pages," Trial Tr. (Non-Testimony Portions) at 192, ECF No. 416 – were not searchable. Craig stated that the FBI agent who assisted counsel in accessing the hard drive indicated counsel could access the material on the hard drive and "search it[,]" *id.* at 195; counsel for co-Defendant Dew indicated that counsel understood that to mean counsel would have to search the hard drive by looking at each file. *Id.* Therefore, it appears the computer hard drive was not inaccessible; rather, the volume of material on the hard drive was such that it was not feasible to review it during trial. Therefore, appellate counsel was not ineffective in failing to assert a claim under *Brady*, and this ground for relief is rejected.

b. *Faretta Claim*

Defendant finally claims that appellate counsel was ineffective in failing to argue an alleged violation of Defendant's rights under *Faretta v. California*, 422 U.S. 806 (1975). Defendant maintains that "on several occasions, [Defendant] and his co-defendants attempted to file *pro se* pleadings right up to the moment just prior to commencement of trial . . . and the Court declined to

16

accept them because [Defendants] were represented by counsel." Memo. at 35. Defendant also contends that

> [a]mong the *pro se* requests made concordantly by the co-defendants was a request to 'fire' their attorneys and to proceed *pro se*. That verbal request was made before this Court and the Court made it known to the 3 defendants that it would decide WHEN AND IF they could 'fire' their counsel. The Court also expressed that it would have to hold a hearing to determine each co-defendant's competency to represent himself. THAT HEARING NEVER TOOK PLACE.

Memo. at 35.

As to the court's alleged failure to file certain *pro se* documents, Defendant's assertion is not supported by the record. The court admonished Defendants that they were represented by counsel and should not submit *pro se* filings, but the court directed that Defendants' submissions be filed as exhibits to ensure the record was complete.

Defendant fails to point to evidence in the record establishing any request – oral or written – to represent himself prior to or during trial of this matter. After he was convicted, Defendant sought to represent himself at sentencing. The court conducted the appropriate *Faretta* hearing and granted Defendant's request. Accordingly, Defendant fails to establish that an appellate court reviewing this claim would rule in his favor, and the Government is entitled to summary judgment on this Ground for Relief.

### IV. CONCLUSION

For the reasons noted above, the Government's motion for summary judgment is **granted** and Defendant's motion for relief is dismissed with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 6, 2016